**Nardeep SINGH, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 008–3126.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) June 1, 2009.

Opinion filed: Oct. 21, 2009.

Nardeep Singh, Kew Gardens, NY, pro se.

Andrew J. Oliveira, Esq., Christina B. Parascandola, Esq., Joan E. Smiley, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: MCKEE, HARDIMAN and COWEN, Circuit Judges.

OPINION

PER CURIAM.

Nardeep Singh petitions for review of an order of the Board of Immigration Appeals (BIA), which dismissed his appeal of an Immigration Judge's (IJ's) final removal order. We will deny the petition.

I.

Singh is a native and citizen of India. He testified that he first entered the United States in 1994 (without a passport or visa). He returned to India in mid-June 2000 using someone else's passport because he had learned that his father had been arrested on June 6, 2000 due to his involvement with the Shormani Akali Dal Committee political party that advocates for the creation of Khalistan. His father was no longer in prison when he returned, but his father was rearrested in January 2001, and was tortured during his 4–day detention. Police came to the family home again on June 5, 2001 to arrest Nardeep's father, but he was not home. The police beat Nardeep and dragged him to the police station, where he was detained for four days. He was brutally beaten and his arm was broken. He was hospitalized for three to five days after his release. The police began visiting the family home looking for Nardeep, so he left for the United States.

Singh applied for asylum in California, and asylum was conditionally granted, but it was cancelled when the Government learned that Singh had been arrested twice for larceny in New York in 1999. A.R. 412. Singh's asylum application had stated that he resided in India from Oct. 1978 to June 2001, and had not disclosed any previous time in the United States. *Id.* The asylum application was referred to the Immigration Court.[1] Singh was al-

---

1. Singh was ordered removed *in absentia,* but his subsequent motion to reopen was granted and venue was changed to New Jersey, because he had moved.

lowed to amend his application. The IJ found that Singh was not credible. The IJ found that Singh had submitted contradictory and partially fraudulent proofs of identity. His arrest records showed the names "Sunn Singh" and "Nardip Singh" and gave incorrect birthdates. Singh said he was not aware how these discrepancies appeared, as he did not lie to the police. Singh submitted a "ration card" issued to his father dated 1999 that includes a photograph of the family, including Nardeep. He stated that the photograph was taken in 2000, but the IJ did not credit his explanation that the reason that a photo taken in 2000 was affixed to a card issued in 1999 must have been because it was reissued. Singh also submitted an Indian driver's license. A forensics report indicated that the license was produced on an ink jet printer and it included a misspelled word. Singh could not provide any information about his living situation in the United States between 1994 and 2000; he could not remember the names of cities he lived in or names of people he lived with, aside from a few nicknames.

The IJ also faulted Singh for failing to provide corroborating evidence regarding events in India. Singh testified that his arm was broken, but the medical report submitted mentions only cuts and bruises. The IJ also noted that the medical report regarding Singh's father and the one regarding Nardeep "are largely identical save for the dates." Singh did not produce any record of his arrest.

The IJ found that Singh had not established with credible testimony or evidence that he had filed his asylum claim within one year of entry to the United States. Alternatively, the IJ found that Singh was not a "refugee" within the meaning of the Immigration and Nationality Act, as he had not provided evidence that he feared persecution on the basis of his Sikh religion, Singh acknowledged that he had nev-er been a member of a political party, and he did not establish that police imputed his father's political opinion to him. The IJ also found no evidence that Singh would be persecuted as a member of a particular social group, and found no evidence of a pattern or practice of persecution of those associated with the Shormani Akali Dal Committee. The IJ denied all relief.

The BIA found that the adverse credibility finding was not clearly erroneous, and also noted that Singh failed to meet his burden regarding past persecution because he did not belong to a political party, and failed to show that his father's opinions had been imputed to him. The BIA also noted that Singh had not presented persuasive evidence that he feared persecution on religious grounds or any other grounds. The BIA held that even if Singh's asylum application had been timely filed, he did not establish eligibility for asylum relief on the merits. Proceeding *pro se,* Singh filed a timely petition for review.

## II.

We review the final order of the BIA, but to the extent that the BIA adopts parts of the IJ's opinion, we review the IJ's opinion to determine whether the BIA's decision to defer to the IJ was appropriate. *Zhang v. Gonzales,* 405 F.3d 150, 155 (3d Cir.2005). "We will uphold the [adverse credibility] findings ... to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the [IJ] did." *Kayembe v. Ashcroft,* 334 F.3d 231, 234 (3d Cir.2003). In general, "minor inconsistencies and minor admissions that reveal nothing about an ... applicant's fear for his safety are not an adequate basis for an

adverse credibility finding." *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002) (internal quotation and citation omitted). Any discrepancies must involve the heart of the claim. *Id.*[2]

The IJ identified several factors supporting her adverse credibility finding: problems with documents Singh produced to establish his identity; his inability to give information about where he was living in the United States and with whom between 1994 and 2000; and an inconsistency between his testimony (his arm was broken when he was beaten in India) and the medical record he submitted (no mention of a broken arm). Singh argues that where he was from 1994 to 2000 is irrelevant to his asylum claim; even assuming he is correct, the other factors cited by the IJ involve the "heart" of Singh's asylum claim.

Singh's claim is based on his allegation that he was detained and beaten in India in 2001. However, the documents Singh produced to show that he returned to India in 2000 and 2001 are questionable. His explanation of how a photo that he alleges was taken in 2000 came to be affixed to a ration card issued in 1999 does not ring true. The driver's license that he alleges was issued in India in 2000 was produced on a laser-jet printer and contains a misspelled word. A bank book allegedly relating to an account he opened in India in September 2001 "contains no indication of who specifically opened the account or made the listed transactions;" Singh also admitted that "anyone in his family can make transactions." IJ's decision at 11; A.R. 77. Further, Singh's testimony that his arm was broken in custody is contradicted by the medical report he produced. While Singh argues that he was not given a chance to explain this discrepancy, he certainly should have been aware of the contents of any exhibits he submitted in support of his asylum claim, and he could have offered an explanation without being prompted to do so. Given the unreliability of Singh's documentary evidence, we do not feel compelled to conclude that Singh was credible. *Lin–Zheng v. Attorney General,* 557 F.3d 147, 155 (3d Cir.2009); 8 U.S.C. § 1252(b)(4)(B).[3]

Because Singh did not credibly testify regarding past persecution or the likelihood of future persecution, the IJ and BIA properly denied Singh asylum and withholding of removal. We further agree that Singh did not produce any evidence that he is likely to be tortured if he returns to India. We will thus deny the petition for review.

---

2. The provisions of the Real ID Act of 2005 regarding review of adverse credibility findings do not apply to cases such as this one, where the asylum application was filed before the enactment of the Real ID Act. Real ID Act of 2005, Pub.L. No. 109–13, Div. B, § 101, 119 Stat. 231 (May 11, 2005).

3. Because we uphold the IJ's adverse credibility finding, we need not discuss the IJ's finding that Singh failed to sufficiently corroborate his claim and her alternative finding that Singh failed to show that any persecution would be on the basis of a statutorily-protected ground.